ROBERT J. YORIO (SBN 93178)
JEFFREY M. CAPACCIO (SBN 129171)
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, CA 94303
Telephone: (650) 812-3400
Facsimile: (650) 812-3444
Email: yorio@carrferrell.com
Email: jcapaccio@carrferrell.com

Attorneys for Plaintiff
NORCAL WASTE SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORCAL WASTE SYSTEMS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>APROPOS TECHNOLOGY, INC., an Illinois corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 06-0341-CW<br><br>**PLAINTIFF NORCAL WASTE SYSTEMS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIRTES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>**Dept:** Courtroom 2<br>**Judge:** Hon. Claudia Wilken |

00188525v1}

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................... 2

III.    FACTUAL BACKGROUND ................................................................. 2

        A.    Plaintiff's Claims For Relief............................................................ 2

        B.    Key Terms In The Parties' License Agreement ............................. 4

              1.    The License Agreement Constituted Confidential Information
                    And Should Not Have Been Filed By The Defendant .............................. 4

              2.    The License Agreement Does Not Constitute The Entire
                    Agreement Between The Parties........................................................ 5

IV.     LEGAL ARGUMENT............................................................................. 6

        A.    Legal Standard Applicable to Motions to Dismiss ......................... 6

        B.    Plaintiff Has Alleged Facts Sufficient To State Cognizable Claims
              For Rescission (First Claim For Relief) And Intentional
              Misrepresentation (Second Claim For Relief) ............................... 7

              1.    The License Agreement Does Not Represent The Complete
                    Agreement Between the Parties. ......................................... 8

              2.    The Parol Evidence Rule Is Inapplicable To Defendant's
                    Claims For Relief............................................................ 9

              3.    The Fraud Exception To The Parol Evidence Rule Is Also
                    Applicable In This Case................................................... 10

              4.    Parol Evidence Is Admissible To Establish Mistake, Invalidity
                    and Failure Of Consideration.......................................... 13

              5.    Plaintiff's Claim Of Misrepresentation Involve Actionable
                    Misstatements Of Fact ................................................... 15

        C.    Plaintiff's Rescission And Intentional Misrepresentation Claims Have
              Alleged Fraud With Sufficient Particularity ................................. 16

        D.    Plaintiff's Negligent Misrepresentation Claim Is Pleaded With
              Sufficient Particularity ................................................................. 18

        E.    Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing
              Claim Is Pleaded With Sufficient Particularity............................. 19

        F.    Plaintiff's Common Count For Money Had And Received Claim
              Does Not Fail As A Matter Of Law............................................. 20

        G.    Plaintiff's Claim For Punitive Damages Is Not Contractually Barred.......... 21

V.      CONCLUSION........................................................................................ 22

00188525v1}                                  -i-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

# TABLE OF AUTHORITIES

## CASES

*Alling v. Universal Manufacturing Corp.*
(1992) 5 Cal.App.4th 1412, 1436 ............................................... 11

*Balistreri v. Pacifica Police Department*
901 F.2d 696, 699 (9th Cir. 1990) ............................................... 6

*Banco Do Basil, S.A. v. Latian, Inc.*
(1991) 234 Cal.App.3d. 973, 1001 ............................................. 11

*Bank of America v. Pendergrass*
(1935) 4 Cal.2d 258, 263 ................................................... 10, 11

*Bosse v. Cromwell Collier & MacMillan*
565 F.2d 602 (9th Cir. 1977) ................................................... 16

*Bradley v. Chiron Corp.*
136 F. 3d 1317, 1326 (9th Cir. 1998) ......................................... 17

*Cahill v. Liberty Mutual Insurance Company*
80 F.3d 336, 337-338 (9th Cir. 1996) ........................................... 6

*Coast Bank v. Holmes*
(1971) 19 Cal.App.3d 581, 590 ............................................... 13

*Continental Airlines, Inc. v. McDonnell Douglas Corp.*
(1989) 216 Cal.App.3d 388, 419 ............................................. 11

*Continental Casualty Company v. Phoenix Construction Company*
(1956) 46 Cal.2d 423, 431 ................................................... 12

*Cooper v. Picket*
137 F. 3d. 616, 627 (9th Cir. 1997) ........................................... 16

*Desaigoudar v. Meyercord*
223 F. 3d 1020, 1022 (9th Cir. 2000) ......................................... 17

*Doe v. United States*
8 F.3d 494, 497 (9th Cir. 1995) ................................................. 6

*Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.,*
C-98-1060 VRW, 2000 U.S. Dist. LEXIS 17688 (N.D. Cal. November 7, 2000) .............. 20

*First Interstate Bank of California v. State of California*
197 Cal. App. 3d 627, 635 (1987) ............................................. 20

*Gentry v. EBay*
(2002) 99 Cal.App.4th 816, 835 ............................................... 15

*Graphic Arts Systems v. Seitex Am. Corp.*
CV-92-6997-WMB (1993) U.S. Dist. Lexis 21052,*25-*26
(C.D. Cal., May 26, 1993) ................................................... 15

*Hearn v. R.J. Reynolds Tobacco Company*
   279 F.Supp.2d 1096, 1102 (D. Ariz. 2003) ........................................................ 7

*Hess v. Ford Motor Co.*
   (2002) 27 Cal.4th 516, 525 ........................................................................ 14

*International Audiotext Network, Inc. v. AT&T Co.*
   62 F.3d 69, 72 (2nd Cir. 1995).................................................................... 7

*Kavruck v. Blue Cross of California*
   (2003) 108 Cal.App.4th 773, 781 ................................................................. 13

*Lewis Publishing Co. v. Henderson*
   (1930) 103 Cal.App.425, 428 ..................................................................... 13

*Lopez v. Smith*
   203 F.3d 1122, 1127 and 1130 (9th Cir. 2000)..................................................... 6

*Masterson v. Sine*
   (1968) 68 Cal.2d 222, 227 ....................................................................... 10

*McLain v. Great American Insurance Company*
   208 Cal.App.3d 1476, 1485 (1989) ................................................................ 9

*Mike Nelson Co. v. Hathaway*
   CV F 05-0208 AWI, 2005 U.S. Dist. LEXIS 27377 .................................................. 21

*Moore v. Kayport Package Express, Inc.*
   885 F. 2d 531, 540 (9th Cir. 1989) ............................................................. 16

*Pacific Gas & Electric Company v. G.W. Thomas Drayage & Rigging Company*
   (1968) 69 Cal.2d. 33, 39 ........................................................................ 10

*Pacific State Bank v. Greene*
   (2003) 110 Cal.App.4th 375, 387-388 ......................................................... 14, 15

*Peloza v. Capistrano Unified School District*
   37 F.3d 517, 521 (9th Cir. 1994) ................................................................ 6

*Pisone v. Superior Court*
   (1991) 228 Cal.App.3d 672, 680-681 ............................................................ 10

*Richard P. v. Vista Del Mar Child Services*
   (1980) 106 Cal.App.3d 860, 865 ................................................................ 15

*Robinson Helicopter Co., Inc. v. Dana Corp.*
   (2004) 34 Cal. 4th 979 .......................................................................... 19

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.*
   (1995) 32 Cal.App.4th 985, 995 ................................................................. 14

*Schultz v. Harney*
   27 Cal. App. 4th 1611 (1994) ................................................................ 20, 21

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

*Semegen v. Weidne*
    780 F. 2d 727, 731 (9th Cir. 1985) ............................................................... 16

*Shaw v. Regents of Univ. of Calif,*
    58 Cal.App.4th (1997) ............................................................................. 9

*Smith v. Jackson*
    84 F.3d 1213, 1217 (9th Cir. 1996) ................................................................ 7

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
    (1991) 2 Cal. App. 4th 153, 159 ................................................................... 18

*Tracer Research v. Nat. Environ. Services Co.*
    42 F. 3d 1292, 1295 (9th Cir. 1994) .............................................................. 22

*United States v. Ritchie*
    342 F.3d 903, 908 (9th Cir. 2003) ................................................................. 7

*Vess v. Ciba-Geigy Corp. USA*
    317 F. 3d 1097 (9th Cir. 2003) .................................................................... 16

*Wang v. Massey Chevrolet*
    (2002) 97 Cal.App.4th 856, 873 ............................................................. 11, 12

## STATUTES

California Civil Code
    Section 1642 ............................................................................................. 9
    Section 1856(e) .................................................................................. 13, 14
    Section 1856(f) ...................................................................................... 13
    Section 1856(g) .......................................................................... 10, 13, 14
    Section 1859 .......................................................................................... 12

Evidence Code
    Section 250 ............................................................................................. 3

Federal Rule of Civil Procedure
    Rule 9(b) ................................................................................ 2, 8, 16, 17
    Rule 12(b)(6) ........................................................................................... 6
    Rule 12(f) ............................................................................................... 2

## OTHER AUTHORITIES

4 Witkin, *California Procedure, Pleading,*
    §522, pp. 611-613 (4th Ed. 1997) .............................................................. 20

5 Witkin, *Summary of California Law, Torts,*
    §781, pp. 1131-1132 (10th Ed. 2005) .......................................................... 18

*Federal Civil Procedure Before Trial*
    Section 9:212.1(c), at 9-55 (TRG 2002) ......................................................... 7

# I. **INTRODUCTION**

Defendant's Motion to Dismiss and Motion to Strike are not well taken.  In its Complaint, Plaintiff Norcal Waste Systems, Inc. ("Plaintiff" or "Norcal") seeks to rescind a written agreement entered into with Defendant Apropos Technology, Inc. ("Defendant" or "Apropos") on grounds of fraud, mutual mistake and failure of consideration.  The written contract to which this first claim for relief for rescission is directed was not attached as an exhibit to the Complaint because of the provisions of a confidentiality clause, included at Defendant's request, which specifically covers the terms and conditions of the written agreement.  Apropos has submitted a copy of that written contract, entitled "Customer Purchase and License Agreement" (the "License Agreement), in support of its motions in violation of that confidentiality provision, and bases all of its arguments on its mistaken reading of provisions of the written agreement.  The written agreement is not properly before this Count, and Defendant's motions should be denied for this reason alone.

In the event that the Court considers the License Agreement proffered by Defendant, the result should be the same.  Both motions should be denied for several reasons.

First, contrary to Defendant's assertions in its memorandum, Plaintiff's claims are based, in part, upon the written statements of Defendant made in a document that was a version of the "Statement of Work", which written document is specifically referenced in and made a part of the written License Agreement.  As such, Defendant's reliance on the integration clause and warranty disclaimers in the License Agreement is entirely misplaced.

Second, the oral statements made by Defendant which induced Plaintiff to enter into the License Agreement are entirely consistent with the provisions of the License Agreement and the Statement of Work and Documentation that comprise integral parts of that Agreement, thereby precluding application of the parol evidence rule to the fraud and misrepresentation claims.

Third, Defendant's oral representations constitute statements of fact made by Defendant, rather than opinions or "puffery."  Accordingly, those representations constitute facts sufficient to support Plaintiff's claims for rescission, intentional misrepresentation negligent misrepresentation, and a common count for money had and received.

Plaintiff has pled fraud with the requisite particularity required under California law and the

1   Federal Rules of Civil Procedure, and Defendant's Motion to Dismiss on that basis should be denied

2   as well.  Finally, Plaintiff's claim for exemplary or punitive damages should be maintained as there

3   is an adequate basis to state such a claim in the Complaint.

4       For all of these reasons, Defendants Motion to Dismiss and its Motion to Strike should both

5   be denied.

6                       ## II.  STATEMENT OF ISSUES TO BE DECIDED

7       1.      Whether Plaintiff's Causes of Action For Rescission, Intentional Misrepresentation,

8   Negligent Misrepresentation, Breach of the Implied Covenant of Good Faith and Fair Dealing and A

9   Common Count for Money Had and Received adequately state claims upon which relief can be

10  granted.

11      2.      Whether of Defendant's action in inaccurately setting forth in writing the "Customer

12  Procurements" section of documents referenced in the License Agreement, by itself requires the

13  denial of Defendant's motions.

14      3.      Whether the integration clause in the License Agreement and the parol evidence rule

15  bar Plaintiff's allegations of oral representations, where those representations are not inconsistent

16  with the provisions of the License Agreement under California law.

17      4.      Whether the Complaint adequately pleads fraud with sufficient particularity as

18  required by Federal Rule of Civil Procedure 9(b).

19      5.      Whether Plaintiff's request for punitive or exemplary damages should or should not

20  be stricken from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

21                       ## III.  FACTUAL BACKGROUND

22      **A.     Plaintiff's Claims For Relief**

23      Plaintiff's Complaint contains five claims for relief, Rescission, Intentional

24  Misrepresentation, Negligent Misrepresentation, Breach of the Implied Covenant of Good Faith and

25  Fair Dealing and a Common Count for Money Had and Received.  The gravaman of Plaintiff's

26  claims is that Defendant falsely stated that the software to be purchased by Plaintiff under the

27  License Agreement would work satisfactorily with Plaintiff's existing telephony infrastructure and

28  that no additional hardware would need to be acquired by Plaintiff before the software could be

1   installed.  Complaint, ¶¶ 8, 9 and 14.  The statements made by Defendant in this regard were made

2   orally as well as in writing.  For example, ¶ 9 of the Complaint reads as follows:

3           "Defendants made the representations mentioned above by way of selling
        the MCIM solution via demonstrations, both on-site and via Internet,

4           utilizing "canned data" which did not accurately represent how it would
        work with Plaintiff's existing telephony infrastructure; and specifying in

5           writing what the required "Customer Procurements" were, without listing

6           the hardware ultimately revealed as necessary for the implementation of the
        MCIM solution for use in Plaintiff's waste management business."

7

8   The "Customer Procurements" referenced in paragraph 9 refers to a section in the written

9   Scope of Work version of the Statement of Work prepared by Defendant and submitted to Plaintiff

10  prior to the execution of the License Agreement.[1]  As the title implies, the Customer Procurement

11  section of this version of the Statement of Work identifies the hardware requirements necessary for

12  the implementation of Defendant's software.  e.g., minimum server specification, etc.

13  The central dispute in this case stems from the fact that the written Customer Procurement

14  section failed to set forth the necessary additional hardware that had to be purchased by Norcal in

15  order to implement the software.

16  Defendant also provided Plaintiff with electronic representations through Internet web

17  conferences which inaccurately represented that Defendant's software would work well with

18  Plaintiff's existing telecommunication infrastructure.  Complaint, ¶ 9.  There are also electronic

19  mails transmitted by Defendant to Plaintiff on the same subjects and containing the same

20  misrepresentations.  These electronic statements and representations also constitute writings similar

21  to the Scope of Work and Statement of Work.  Evidence Code ¶250.

22  The last category of representations made by Defendant in this area consists of oral

23  representations which were made in on-site sales calls and product demonstrations at Norcal's place

24  of business, as well as telephone calls and other meetings.  Complaint, ¶ 8 and 9.

25  As such, and contrary to the assertions in Defendant's Memorandum, the false statements and

26  misrepresentations at issue in this case were chiefly written (including those delivered by electronic

27

28  [1] These additional documents are not before the Court on this Rule 12(b)(6) Motion.

-3-

1    means) and only partially oral.  As will be discussed more hereinbelow, this is a key distinction in

2    analyzing Defendant's motions.

3          **B.**    **Key Terms In The Parties' License Agreement**

4          In its Memorandum, Defendant calls to the Court's attention a number of provisions upon

5    which it places substantial reliance.  However, there are a number of other provisions that are

6    equally important to the Court's consideration of Defendant's motion.  It is those provisions that

7    support Plaintiff's Opposition to the Motion to Dismiss.

8
          **1.**    **The License Agreement Constituted Confidential Information And**
9                    **Should Not Have Been Filed By The Defendant**

10         As mentioned previously, Plaintiff did not include a copy of the License Agreement as an

11    exhibit to its Complaint because of the confidentiality provisions in that agreement.  The License

12    Agreement contains a confidentiality clause which provides, in pertinent part,

13          "7.    Confidentiality

14
15               Each party agrees, for the term of this agreement and (3) years after
          its expiration or termination to hold the other party's Confidential
16          Information in strict confidence, not to disclose such Confidential
          Information to third parties not authorized by the disclosing party to receive
17          such Confidential Information and not to use such Confidential Information
          for any purpose except as expressly permitted hereunder.

18
19    Confidential Information is a defined term in the License Agreement.  That definition is as follows:

20          "1.5    "Confidential Information" means in the case of Apropos, any (i)
          Software, Documentation, programs, intellectual property, know-how or
21          other material, ideas or concepts relating to data processing submitted by
          Apropos or developed during the course of this agreement by Apropos'
22          personnel or jointly by Apropos and Customer personnel); (ii) information
          relating to pricing and the <u>other terms and conditions of this agreement</u>."
23          (Emphasis supplied.)

24         The License Agreement was drafted by Apropos and precluded Apropos from filing a copy of

25    the License Agreement in support of their Motion to Dismiss without any restrictions.  The

26    document was not submitted under seal, and Plaintiff did not consent to the filing of the License

27    Agreement in open court.  By the express terms of the License Agreement, which Defendant

28    requests the Court to apply so strictly, the License Agreement is not property before the Court on

00188525v1}          **-4-**

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

1    this motion. For this reason alone, Defendant's Motion to Dismiss and accompanying Motion to

2    Strike should both be denied.

3            **2.      The License Agreement Does Not Constitute The Entire
                        Agreement Between The Parties.**
4

5            In its Memorandum, Defendant contends that the License Agreement is the only operative

6    agreement between the parties, and the only document that can be considered in evaluating the

7    rights and obligations of the parties. This is completely untrue. The plain language of the License

8    Agreement itself discloses that there are other agreements and documentation which comprise parts

9    of the parties' complete agreement, and that the License Agreement should not and cannot be read

10   in isolation. For example, the License Agreement specifically provides that the software to be

11   supplied to Norcal would meet specifications set forth in a document entitled "Statement of Work"

12   along with other written material entitled "Documentation." One of those provisions is entitled

13   "Limited Warranty and Exceptions" and provides in pertinent part as follows:

14           "5.      Apropos warrants that during the Warranty Period, Software that is
                      developed, manufactured and provided by Apropos hereunder, when
15                    properly installed and operated, will conform to the functional
                      specifications set forth in the Statement of Work and Documentation
16                    provided by Apropos to Customer...."
17

18   The term "Documentation" is defined in the License Agreement as:

19           "1.8     "Documentation" means any Documentation that accompanies the Software."

20           The term "Statement of Work" is not defined in the License Agreement, but refers to a

21   separate document to be agreed to by the parties, the first version of which is a confidential

22   document prepared by Apropos entitled "Scope of Work Outline" which was submitted to Norcal.

23   It is that document that contains a section on Customer Procurements, i.e., the hardware and

24   peripheral equipment needed to support Defendant's Software.

25           By its own terms, the License Agreement is not a self-contained, wholly integrated contract.

26   The relative rights and obligations of the parties with respect to Plaintiff's software can only be

27   determined by reference to other agreements and documentation outside of the four corners of the

28

1  License Agreement.  This fact wholly undermines Defendant's argument in this motion, which relies

2  heavily on an integration clause in the License Agreement.

3  ///

4  ### IV.  LEGAL ARGUMENT

5  **A.**   **Legal Standard Applicable to Motions to Dismiss**

6      Under Federal Rule of Civil Procedure 12(b)(6), the Court analyzes the legal sufficiency of

7  the claim or claims stated in the Complaint.  It is often stated that a Rule 12(b)(6) dismissal is

8  proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient

9  facts alleged under a cognizable legal theory;" *Balistreri v. Pacifica Police Department,* 901 F.2d

10  696, 699 (9th Cir. 1990).

11      In resolving a Rule 12(b)(6)( motion, the Court must:  (1) construe the Complaint in the

12  light most favorable to the Plaintiff; (2) accept all well-pleaded facts and allegations as true; and (3)

13  determine whether Plaintiff can prove any set of facts to support a claim that would merit relief.

14  *Cahill v. Liberty Mutual Insurance Company,* 80 F.3d 336, 337-338 (9th Cir. 1996).  In addition, the

15  Court must assume that all general allegations "embrace whatever specific facts might be necessary

16  to support them."  *Peloza v. Capistrano Unified School District*, 37 F.3d 517, 521 (9th Cir. 1994),

17  cert. denied, 515 U.S. 1173, 115 S. Ct. 2640, 132 L.Ed.2d 878 (1995).

18      Even if the Court decides to grant a motion to dismiss, either in whole or in part, it must

19  then consider whether to grant leave to amend.  In that circumstance, the Ninth Circuit has

20  repeatedly held that a district court should grant leave to amend, even if no request to amend

21  pleading was made, unless it determines that the pleading could not possibly be cured by the

22  allegations of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 and 1130 (9th Cir. 2000); *Doe v.*

23  *United States*, 58 F.3d 494, 497 (9th Cir. 1995).  While Plaintiff believes that its original Complaint

24  alleges facts sufficient to state all five claims for relief against Defendant, Plaintiff provisionally

25  requests the Court for leave to amend the Complaint in the event the Court determines that further

26  specificity is required.

27      In considering its Motions, Defendant asks the Court to consider the License Agreement

28  which Defendant attached to the accompanying Declaration of Jason Meretsky, Vice President and

00188525v1}

-6-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

1   General Counsel of Apropos.  The Defendant recognizes the general rule that a court should not

2   consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, but offers the

3   License Agreement in this case because the agreement is referenced in the Complaint, though not

4   attached thereto, citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

5        Plaintiff has no quarrel with this legal proposition as a general matter.  The problem with

6   Defendant's submission of the License Agreement in this case is that the agreement, by its own

7   terms, constitutes Confidential Information which cannot be disclosed without the consent of

8   Plaintiff.  The Defendant should have sought Plaintiff's consent in submitting the License

9   Agreement to the Court in the public record or, alternatively, requested leave to file the License

10  Agreement under seal.  Defendant did neither, and the License Agreement is therefore not properly

11  before the Court on this Motion.

12       In the event the Court decides to consider the License Agreement submitted by Defendant,

13  the Court must resolve any ambiguities in the License Agreement in favor of Plaintiff.  *International*

14  *Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2nd Cir. 1995); *Hearn v. R.J. Reynolds*

15  *Tobacco Company*, 279 F.Supp.2d 1096, 1102 (D. Ariz. 2003); *see also, Smith v. Jackson*, 84 F.3d

16  1213, 1217 (9th Cir. 1996); *William W. Schwarzer, et al., Federal Civil Procedure Before Trial*,

17  Section 9:212.1(c), at 9-55 (TRG 2002).

18

19   **B.    Plaintiff Has Alleged Facts Sufficient To State Cognizable Claims For**
        **Rescission (First Claim For Relief) And Intentional Misrepresentation**
20       **(Second Claim For Relief)**

21       As mentioned in Section III(B)(2), *supra*, the erroneous statements made by Defendant

22  concerning the adequacy of utilizing Defendant's software with Plaintiff's existing

23  telecommunication configuration were both oral and in writing, and the written misrepresentations

24  constituted a breach of the express provisions of the License Agreement.  The License Agreement is

25  not the only document comprising the parties' contract.  By its own terms, it includes and

26  incorporates by reference the Statement of Work and other Documentation that accompanies the

27  Software.  The parol evidence rule does not apply in this case because:  (1) Defendant has breached

28  the terms of the complete contract between the parties; (2) because of the fraud exception to the

00188525v1}

PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

1  parol evidence rule; (3) because the evidence is necessary to interpret the License Agreement; and

2  (4) because the License Agreement is voidable on grounds of mistake, fraud and lack of

3  consideration.  In addition, the misrepresentations that are the heart of the dispute in this case

4  involve statements of the fact and not mere opinions by Defendant and Plaintiff has alleged fraud

5  with sufficient particularity as required by Rule 9(b).

6  ///

7  ///

8          1.      **The License Agreement Does Not Represent The Complete**
9                  **Agreement Between the Parties.**

10         Most of the arguments relied upon by Defendant in its Motion to Dismiss rest upon the

11 premise that a merger or integration clause in the License Agreement means, as a matter of law,

12 that that agreement constitutes the complete contract between the parties and no other written

13 documents may be considered.  Defendant's reliance in this regard is misplaced, and requires a

14 denial of the Motion to Dismiss.

15         It is certainly true that Section 10.13 in the License Agreement, entitled "Entire Agreement",

16 is a type of integration clause, but it is unusually limited in scope to "any and all prior agreements" -

17 and not prior representations, understandings, statements, etc..  Moreover, the License Agreement

18 specifically references and expressly incorporates by reference, several other documents that

19 comprise the complete agreement between the parties.  Two examples of such additional

20 documentation are the Statement of Work specifically referenced in Section 5.1 and the

21 Documentation, defined as all documentation that accompanies the Software, referenced in Sections

22 1.8, 4.2 and 5.1.

23         The express warranty language in Section 5.1 specifically measures Apropos' Software

24 against specifications set forth in documents outside of the License Agreement, i.e., the Statement

25 of Work and such Documentation provided by Apropos to the customer.  Obviously, the trier of fact

26 must be provided with the Statement of Work and the other documentation in order to determine

27 whether or not the express contractual warranty in the License Agreement was breached.  Such an

28 interpretation gives effect to the mutual intention of the parties as it existed at the time the License

1  Agreement was entered into because, among other reasons, there are no other provisions in the

2  License Agreement itself which even identify the requirements of Defendant's software.

3  Consequently, the Court must reject Defendant's suggestion that the License Agreement

4  attached to the Meretsky Declaration represents the complete agreement between the parties, and no

5  other document may be referred to.  The License Agreement specifies the exact opposite and the

6  parties' complete agreement includes the License Agreement, the Statement of Work (including the

7  initial version entitled "Scope of Work Outline") and Documentation (which by definition would

8  also include the Scope of Work Outline).  See California Civil Code §1642 ("several contracts

9  relating to the same matters, between the same parties and made as parts of substantially one

10  transaction, are to be taken together"); *Shaw v. Regents of Univ. of Calif.,* 58 Cal.App.4[th] (1997),

11  54; 67 Cal.Rptr. 850 (patent agreement between teacher and university was contract that

12  incorporated terms of patent policy in effect at time teacher was hired); *McLain v. Great American*

13  *Insurance Company* 208 Cal.App.3d 1476, 1485 (1989) (standardized application form omitted key

14  aspects of employment and stated the terms could be changed; Plaintiff could prove implied

15  contract requiring cause for termination).

16  Plaintiff has specifically alleged that the "Customer Procurements" section of the Statement

17  of Work (as set forth in the Scope of Work Outline) inaccurately failed to list all of the hardware

18  that was necessary for Norcal to implement Defendant's software in its telecommunication network.

19  Complaint, ¶¶ 8, 9 and 14.  These misstatements are a part of the complete contract of the parties,

20  and do not constitute extrinsic parol evidence.  Defendant's Motion to Dismiss the first two claims

21  for relief should be denied for this reason.

22  **2.    The Parol Evidence Rule Is Inapplicable To Defendant's**
          **Claims For Relief**
23

24  There are a number of reasons why the parol evidence rule is inapplicable to Plaintiff's first

25  and second claims for relief.  As mentioned in the preceding section, there is, on the face of the

26  License Agreement itself, an issue with respect to which documents comprise the parties' complete

27  agreement, i.e., the License Agreement alone, as Defendant suggests, or the License Agreement in

28  conjunction with the Statement of Work and other Documentation, as Plaintiff contends.  The

1  provisions in Sections 4.2 and 5.1 of the License Agreement, which measure Defendant's

2  performance by the Statement of Work and Documentation, preclude Plaintiff's integration

3  argument and related parol evidence rule contention by themselves.

4         In addition, parol evidence is admissible to explain an extrinsic ambiguity or otherwise

5  interpret the terms of the agreement.  California Code of Civil Procedure, § 1856(g); *Masterson v.*

6  *Sine* (1968) 68 Cal.2d 222, 227; 65 Cal.Rptr. 545, 436 P.2d. 561; *Pacific Gas & Electric Company*

7  *v. G.W. Thomas Drayage & Rigging Company* (1968) 69 Cal.2d. 33, 39; 69 Cal.Rptr. 561, 442 P.2d

8  641 (the correct test for the admissibility of extrinsic evidence is whether the evidence is relevant to

9  prove a meaning to which the language is reasonably susceptible); *Pisone v. Superior Court* (1991)

10 228 Cal.App.3d 672, 680-681; 279 Cal.Rptr. 173 (extrinsic evidence admissible to determine

11 whether dealer who sold vehicle to buyer was agent and leasing company was principal in selling of

12 service contract to buyer, even though the contract referred to the company as the "administrator").

13        Here, parol evidence is admissible to ascertain the Statement of Work (a term not expressly

14 defined in the License Agreement) and what documentation should be considered in evaluating

15 Plaintiff's claims when Documentation is defined in the License Agreement as "any documentation

16 that accompanies the Software".  License Agreement, Section 1.8.  At a minimum, Plaintiff's

17 contention that the Statement of Work and Documentation need to be considered along with the

18 License Agreement is a meaning to which the language of these sections is "reasonably

19 susceptible." *Pacific Gas & Company v. G.W. Thomas Drayage & Rigging Company*, 69 Cal.2d at

20 37.

21        **3.     The Fraud Exception To The Parol Evidence Rule Is**
          **Also Applicable In This Case**

22

23        California Code of Civil Procedure Section 1856(g) codifies the fraud exception, indicating

24 that the parol evidence rule does not exclude other evidence of the circumstances under which the

25 agreement was made or to which it relates..."or to establish illegality or fraud."  The application of

26 the parol evidence rule is an area of some inconsistency in California.  The case controlling

27 California Supreme Court case on the subject is *Bank of America v. Pendergrass* (1935) 4 Cal.2d

28 258, 263, 48 P.2d 659.  The *Pendergrass* decision involved an oral promise by a lender to extend or

1   postpone payments under a promissory note which contained an unconditional promise to pay on

2   demand.  Under the *Pendergrass* rule, the fraud exception to the parol evidence rule applies where

3   parol evidence is offered to show a fraudulent promise "directly at variance with the promise of the

4   writing."  *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 419,

5   421, 264 Cal.Rptr. 779;  *Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 873; 18 Cal.Rptr.

6   856.

7          Some appellate courts in California have characterized the false promise exception

8   somewhat differently, holding that parol evidence of a false or fraudulent representation which is

9   either independent of or consistent with the written instrument is admissible.  See e.g., *Alling v.*

10  *Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1436; 7 Cal.Rptr. 2d. 718; *Banco Do*

11  *Basil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d. 973, 1001; 285 Cal.Rptr. 870.  In the case

12  principally relied upon by Defendant on this issue in their memorandum, *Wang v. Massey*

13  *Chevrolet, supra,* the court specifically acknowledged the differences between the interpretation of

14  the parol evidence rule in *Banco Do Brasil* and the fraud exception to the rule set forth in

15  *Pendergrass* and *Continental Airlines.*  See *Wang v. Massey Chevrolet, supra,* 97 Cal.App. 4th at

16  873.

17         Without attempting to reconcile the two lines of authority, the Court of Appeal in *Wang*

18  applied the "directly at variance" or *Pendergrass* test to the oral representations at issue there.  *Id.*

19  97 Cal.App.4th at 874.  In the case of one of the leases at issue (the Lendco lease), the Court of

20  Appeal interpreted the written provisions of the lease to be that the Wangs would be entitled to

21  terminate the lease at any time upon thirty days written notice, and that if they purchased the

22  vehicle upon termination, the maximum payment would be the estimated wholesale value of the

23  lease vehicle at lease end, or $15,200.  The Court held that the payment of that amount, combined

24  with the initial down payment, was consistent with the oral representations made to the Plaintiffs

25  that they could purchase the vehicle for a total of $25,213 by paying $20,000 immediately and

26  paying the remaining $15,213 in the event of an early termination during the initial term of the

27  lease.  On that basis, the Court concluded that the oral representations fell within the fraud

28  exception to the parol evidence rule.  *Wang, supra,* 97 Cal.App.4th at 874-875.

00188525v1}

-11-
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

1    In the present case, the Plaintiff's allegations of misrepresentation are consistent with, and

2  not "directly at variance" with the terms of the License Agreement.  As alleged in Paragraphs 8 and 9

3  of the Complaint, Defendant made the following representations and warranties:

- Defendant represented that the Software "contained tight integration with Plaintiff's existing telephony voice processing infrastructure";

- Defendant gave demonstrations using "canned" data that "did not accurately represent how the Software would work" with Plaintiff's existing telephony infrastructure;

- Defendant specified in writing what the required "Customer Procurements" of telephony infrastructure were, without listing the hardware ultimately revealed as necessary for implementation of the Software with Plaintiff's existing telephony infrastructure; and

- Defendant confirmed that the Software "would be capable of integration with Plaintiff's existing telephony infrastructure."

13  These allegations are entirely consistent with Plaintiff's claim that the written Scope of Work

14  Outline, which set forth the specific Customer Procurements i.e., required hardware and ancillary

15  equipment necessary to implement Plaintiff's software, was relied upon in moving forward with the

16  License Agreement and paying the entire purchase price thereunder to the Defendant.  Like the

17  situation with the Lendco lease in *Wang*, all of the representations, and specifically the written

18  representations in the Customer Procurement section, are consistent with Section 5.1 of the License

19  Agreement which measures the Defendant's Software by relation to the Statement of Work and

20  other Documentation.  The fraud exception to the parol evidence rule is therefore applicable to the

21  first two claims for relief.

22    Defendant's reliance on the more general disclaimer of liability section (Section 6.2) is also

23  misplaced because that section states in pertinent part that:

> "6.2  No Additional Warranties.  EXCEPT AS EXPRESSLY SET FORTH
> IN THIS AGREEMENT, APROPOS EXPRESSLY DISCLAIMS ANY
> REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED…"

27  Understandably, Defendant overlooks the introduction to this section which specifically carves out

28  the express warranty from the general warranty disclaimer.  In this case, the specific provisions of

00188525v1}

-12-

PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

1  Section 5.1 control over the general disclaimer language in Section 6.2.   California Code of Civil

2  Procedure, § 1859; *Continental Casualty Company v. Phoenix Construction Company* (1956) 46

3  Cal.2d 423, 431; 296 P2d. 801; *Kavruck v. Blue Cross of California* (2003) 108 Cal.App.4th 773,

4  781; 134 Cal.Rptr. 2d 152.  The fraud exception applies to Plaintiff's claims for relief,

5  notwithstanding the Disclaimer of Liability language in Section 6.2 of the License Agreement.

### 4.   Parol Evidence Is Admissible To Establish Mistake, Invalidity and Failure Of Consideration

8  Another exception to the parol evidence rule is where evidence is introduced to prove

9  mistake (California Code of Civil Procedure § 1856(e)), invalidity of the agreement (California Code

10  of Civil Procedure § 1856(f)), or lack of consideration (California Code of Civil Procedure § 1856(f)

11  and (g)),  It is clearly the case in California that parol evidence is admissible to show a subsequent

12  failure of a promised consideration.  This is so because the failure of promise consideration renders

13  the contract voidable, and because it does not contradict the terms of the agreement.  *See Coast Bank*

14  *v. Holmes* (1971) 19 Cal.App.3d 581, 590; 97 Cal.Rptr. 30; *Lewis Publishing Co. v. Henderson*

15  (1930) 103 Cal.App.425, 428; 284 P. 713.

16  Here, Plaintiff claims that the software to be supplied by Defendant could be successfully

17  implemented with Plaintiff's existing telecommunication configuration and structure.  Complaint,

18  ¶¶ 8, 9 and 14.  That central allegation does not contradict any provision in the License Agreement,

19  and Defendant can point to no such provision.  To the contrary, Plaintiff's allegations in this regard

20  are consistent with the express language in Section 5.1 that requires the software to conform to the

21  Statement of Work and Documentation, which documents contain the Customer Procurement

22  misstatements discussed  hereinabove.  After Plaintiff had paid the entire purchase price to

23  Defendant, it was then revealed by Defendant that additional hardware and ancillary equipment

24  (costing in the neighborhood of $225,000 in additional money) was necessary to properly implement

25  Defendant's software.  This was not the consideration bargained for by the Plaintiff, and evidence of

26  oral and written misrepresentations on this point are admissible under the failure of consideration

27  exception to the parol evidence rule.  California Code of Civil Procedure § 1856(f) and (g).

28  In its Memorandum, Defendant contends that the mistake exception is limited only to an

1   imperfection in the writing. *Id.* See Defendant's Memorandum at page 8. Defendant is incorrect.

2   Under Section 1856 of the Code of Civil Procedure, subdivision (e), the parol evidence rule does not

3   exclude evidence of "a mistake or imperfection of the writing." The mistake exception is therefore

4   not limited only to an imperfection of the writing.

5           The California Supreme Court has recently had the opportunity examine the mistake

6   exception to the parol evidence rule.

7               "In determining whether a mutual mistake has occurred, a court may
                consider parol evidence. [Citation.] Such evidence is admissible to show
8               mutual mistake even if the contracting parties intended the writing to be a
                complete statement of their agreement. [Citation.] 'It is the rule that,
9               where the writing itself, through mistake, does not therefore contain the real
                contract between the parties, the objection as to parol evidence is without
10              merit.' [Citation.] Extrinsic evidence is necessary because the court must
                divine the true intentions of the contracting parties and determine whether
11              the written agreement accurately represents those intentions. [Citation.]"
                *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 525, 117 Cal.Rptr.2d 220,
12              41 P.3d 46. See also, *Pacific State Bank v. Greene* (2003) 110 Cal.App.4th
                375, 387-388; 1 Cal.Rptr.3d 739 (where Bank sued guarantors for breach of
13              guarantor agreements, the trial court erred in excluding evidence of factual
                misstatements over the contents of the guaranty agreements. The Court of
14              Appeal concluded the exceptions under the parol evidence rule were
                available on grounds of mutual mistake and a unilateral mistake about the
15              nature of the agreement as well as fraud in the inducement).

16

17          The California Supreme Court decision in *Hess v. Ford Motor Co., supra,* and the Court of

18  Appeal decision in *Pacific State Bank v. Greene, supra,* apply to the present situation as well. Here,

19  Plaintiff claims that it was induced to enter into the License Agreement based, at least in part, on the

20  mistaken assumption that no additional hardware or peripheral equipment would need to be

21  purchased in order to implement Defendant's software. Complaint, ¶¶ 8, 9, 14 and 15. That

22  assumption, in turn, was based on the specific written definition of "Customer Procurements" in the

23  Scope of Work and similar electronic presentations by Defendant as to how its software would work

24  with Plaintiff's existing telephony network. If Defendant now contends that these assurances are

25  not part of the License Agreement, then Plaintiffs were mistakenly misled as to the content of that

26  agreement. The mistake and fraud exceptions to the parol evidence rule set forth in Code of Civil

27  Procedure Section 1856(e) and (g) are therefore both applicable in the present case. *Pacific State*

28  *Bank v. Greene, supra,* 110 Cal.App.4th at 387-389 and 392-396; *Ron Greenspan Volkswagen, Inc.*

1    *v. Ford Motor Land Development Corp.* (1995) 32 Cal.App.4[th] 985, 995; 38 Cal.Rptr.2d 783.

2    **5.    Plaintiff's Claims Of Misrepresentation Involve Actionable**
3         **Misstatements Of Fact**

4         The parties are in general agreement with respect to California law on the difference

5    between an actionable misstatement of fact and a non-actionable expression of opinion.  "A

6    representation is one of opinion if it expresses only the belief of the maker, without certainty, as to

7    the existence of the fact; or his judgment as to the quality, value, authenticity or other matters of

8    judgment."  *Gentry v. EBay* (2002) 99 Cal.App.4[th] 816, 835.  On the other hand, actionable

9    fraudulent representations "must be as to existing and material facts" *Richard P. v. Vista Del Mar*

10   *Child Services* (1980) 106 Cal.App.3d 860, 865.

11        Where the parties differ is on the application of those principles to the case at hand.

12   Plaintiff's allegations implicate statements of fact about how Defendant's software would work

13   with Plaintiff's telecommunication infrastructure, what required "Customer Procurements" were

14   necessary to successfully implement Defendant's software, and that Plaintiff's existing telephony

15   infrastructure did not need to be upgraded or modified with the purchase of additional hardware.

16   Complaint, ¶¶ 8, 9 and 14.  These are all statements of fact; either Plaintiff had to purchase

17   additional hardware in order to implement Defendant's MCIM solution, or it did not.  Such a

18   statement is a representation as to an existing and material fact, and not "seller's talk" or "puffing"

19   concerning the buyer's potential satisfaction with the product.  *Pacific State Bank v. Greene, supra,*

20   110 Cal.App.4[th] at 390-391.

21        The case of *Graphic Arts Systems v. Seitex Am. Corp.*, CV-92-6997-WMB (1993) U.S. Dist.

22   Lexis 21052,*25-*26 (C.D. Cal., May 26, 1993) cited by Defendant in its brief is instructive.  In

23   that case, the district court granted a motion to dismiss fraud claims which were based on the

24   allegation that Defendant had stated that the computer equipment to be purchased by the Plaintiff

25   would increase the productivity of its business.  *Id.*  Plaintiff's allegations in the Complaint are

26   nothing similar to those at issue in *Graphic Arts Systems*.  Plaintiff's allegations that Defendant

27   wrongfully misrepresented that no additional hardware or ancillary equipment would have to be

28   purchased is a flat misstatement of fact constituting an actual basis for fraud and misrepresentation.

1  (Supply citation.)

2  **C.    Plaintiff's Rescission And Intentional Misrepresentation**
3       **Claims Have Alleged Fraud With Sufficient Particularity**

4       As we noted in Part IV(B)(3), above, the Complaint alleges misrepresentations in specific

5  and concrete terms with regard to the capabilities of the software, e.g. that it would "tight[ly]

6  integrat[e] with Plaintiff's existing telephony voice processing infrastructure," how the software

7  would work with Plaintiff's existing telephony, and that the software 'would be capable of

8  integration with Plaintiff's existing telephony infrastructure." The Complaint further alleges that

9  these representations were false, in that Defendant's software was *unable* to work with Plaintiff's

10  existing telephony, as represented.  Complaint, ¶14.

11      The foregoing allegations satisfy the pleading standard of Rule 9(b) that "the circumstances

12  constituting fraud or mistake shall be stated with particularity."  This particularity standard is

13  satisfied if the pleading "identifies the circumstances constituting fraud (or mistake) so that the

14  Defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package*

15  *Express, Inc.* 885 F. 2d 531, 540 (9th Cir. 1989).  This means that the allegations of the complaint

16  "must be specific enough to give Defendant notice of the particular misconduct which is alleged to

17  constitute the fraud (or mistake) charged so that they can defend the charge and not just deny that

18  they have done anything wrong." *Semegen v. Weidne*, 780 F. 2d 727, 731 (9th Cir. 1985) (citing

19  *Bosse v. Cromwell Collier & MacMillan*, 565 F.2d 602 (9th Cir. 1977)).

20      Defendant invokes the citation with approval, in *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d

21  1097 (9th Cir. 2003), of the reference in *Cooper v. Picket*, 137 F. 3d. 616, 627 (9th Cir. 1997) to the

22  requirement that the "who, what, when, where, and how" of the fraud must be pleaded.

23  Memorandum, 11:3-12.  As *Cooper* went on to explain, this "who, what, when, where, and how"

24  standard is satisfied where "the complaint 'identifies the circumstances of the alleged fraud so that

25  Defendants can prepare an adequate answer'." *Id.*, 627.  *Vess*, as cited by Defendant, is to the same

26  effect: the standards of Rule 9(b) are satisfied if the allegations are "specific enough to give

27  Defendants notice of the particular misconduct so that they can defend against the charge and not

28  just deny that they have done anything wrong." *Vess, supra*, 317 F. 3d at 1106.

1    Defendant is wrong in asserting that the standard for pleading common law fraud of the kind

2    alleged here is a "high degree of meticulousness." Memorandum, 11:3-5, 13-14. Defendant's

3    reliance on *Desaigoudar v. Meyercord* 223 F. 3d 1020, 1022 (9th Cir. 2000) for that proposition is

4    misplaced, because the *Desaigoudar* case addressed the heightened particularity requirements

5    applicable when a claim is asserted which is subject to the Private Securities Reform Act of 1995.

6    No such claim is asserted here. Thus, the "high degree of meticulousness" standard is inapplicable

7    here, and is irrelevant to the determination Defendant's motion.

8    Also misplaced is Defendant's reliance on *Bradley v. Chiron Corp.* 136 F. 3d 1317, 1326

9    (9th Cir. 1998), which Defendant cites for the proposition that "in order to rescind a contract based

10    on fraud, the Plaintiff *must plead* that the Defendant intentionally induced a misunderstanding of the

11    contract terms, or must have known of the Plaintiff's misunderstanding and fostered it."

12    Memorandum, 11:19-22 (Emphasis added). *Bradley* does not so hold, however - the cited language

13    describes the *elements of a claim for rescission based on fraud*, not a *pleading standard under Rule*

14    *9(b)*. Thus, the authorities cited by Defendant do not support its contention that Plaintiff was

15    required to "say exactly who made the statements, provide concrete dates as to when the

16    representations were made, or explain specifically what was said." *Id.,* 11:16-17.

17    When evaluated under the *proper pleading standard*, it is apparent that the allegations of the

18    complaint are "specific enough to give Defendants notice of the particular misconduct so

19    that they can defend against the charge and not just deny that they have done anything wrong."[2]

20    Specifically, the complaint explains that the particular misconduct alleged is that Defendant

21    misrepresented the ability of the software to integrate with Plaintiff's existing telephony, and that

22    the misrepresentations were made during demonstrations by Defendant in the course of negotiating

23    the agreement. Complaint, ¶¶8-9. The complaint further explains that the representations were

24    false because the software was unable to function with Plaintiff's existing telephony voice

25    processing infrastructure without adding or upgrading hardware or implementing VoIP. *Id.,* ¶14.

26    This information is clearly sufficient for Defendant to identify the particular misconduct with which

---

27    [2]    Defendant concedes as much elsewhere in its Memorandum, by acknowledging that "[t]hese allegations simply
28       assert that during negotiations, Defendant promised to deliver software that would work seamlessly with
         Plaintiff's existing telephony infrastructure." (at 14:2-4.)

1   it is charged, and to respond substantively to that charge.  Thus, fraud has been adequately pleaded,

2   and Defendant's motion must be denied as to the Second Cause of Action for intentional

3   misrepresentation.

4       **D.    Plaintiff's Negligent Misrepresentation Claim Is**
        **Pleaded With Sufficient Particularity**

5

6       The arguments purporting to support each of Defendant's three challenges to the negligent

7   misrepresentation claim must be rejected, because no challenge provides adequate grounds for

8   dismissing the claim.  First, it must be noted that the claim is *not* one for "negligent false promise,"

9   as Defendant contends - the claim is for *negligent misrepresentation*.  Second, the allegations

10  supporting the claim are not barred by the parol evidence rule, for the reasons discussed in Part

11  (IV)(B)(3) above.  And, finally, the claim is not barred by the economic loss rule either, because it is

12  not based on Defendant's failure to fulfill a contract obligation.

13      A claim for false promise is based on the theory that "a *promise made without any*

14  *intention to perform* may constitute fraud."  5 Witkin, *Summary of California Law, Torts*, §781, pp.

15  1131-1132 (10th Ed. 2005) (Emphasis in original.)  The defining characteristic of such a claim is

16  that a promise is made *without intention to* perform *in the future*.  *Id.*  Plaintiff does not assert a

17  claim for false promise here.  Rather, Plaintiff alleges that, without reasonable grounds for believing

18  them to be true, Defendant made representations about the *existing* capabilities of its software

19  product.  That constitutes a straightforward claim for negligent misrepresentation, the elements of

20  which are a representation: (1) as to a past or existing fact: (2) that was untrue; (3) that was made

21  without any reasonable ground for believing it to be true; (4) that was made with the intent to

22  include Plaintiff to rely on it; (5) that Plaintiff was unaware of the falsity of the representation; and

23  (6) damages.  *Id.,* §818.  Under the circumstances, the case of *Tarmann v. State Farm Mut. Auto.*

24  *Ins. Co.* (1991) 2 Cal. App. 4th 153, 159, relied on by Defendant - which addressed a situation in

25  which there was no claim alleged based on "a past or existing material fact" (at 158) – has no

26  application here.

27      With regard to Defendant's argument based on the parol evidence rule, the discussion in

28  Parts IV(B)(2) and (3), above, demonstrate why - especially given the express incorporation by

1   reference in the parties' agreement of documents containing misrepresentations, and the fact that the

2   misrepresentations purported to explain not contradict the agreement terms – evidence of the

3   misrepresentations is not barred by the parol evidence rule.

4         With regard to the economic loss rule, once again Defendant misstates the

5   basis of Plaintiff's claim, and as a result Defendant's reliance on case law is once again misplaced.

6   On the facts alleged, *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal. 4th 979 has no

7   application here.   That case held that as a general principle a claim in tort does not lie for conduct

8   which constitutes a breach of contract: "the economic loss rule requires a purchaser to recover in

9   contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm

10  above and beyond a broken contractual promise."  (at 988).  However, the economic loss rule does

11  not bar tort claims that are *independent of a breach of contract*.  (at 991).

12        Here, Plaintiff's negligent misrepresentation claim is independent of the contract.  The thrust

13  of the cause of the misrepresentation claim is that Defendant made misrepresentations *in order to*

14  *induce Plaintiff to enter into an agreement*.  Accordingly, *Robinson* has no application to the facts

15  alleged in the complaint, and it does not provide grounds for dismissing the Third Cause of Action

16  for negligent misrepresentation.  Defendant's motion must therefore also be denied as to the Third

17  Cause of Action.

18      **E.**    **Plaintiff's Breach Of The Covenant Of Good Faith And Fair**
              **Dealing Claim Is Pleaded With Sufficient Particularity**

19

20        On this point, Defendant contends that the implied covenant claim should be dismissed

21  because "Plaintiff's sole support for this claim is the alleged pre-contractual misrepresentations in

22  ¶¶ 8-9, 14-15 and 39 of the Complaint," and that "these alleged promises are not part of the

23  Contract [License Agreement], and must be excluded under the parol evidence rule."  Defendant's

24  Memorandum at 13:27 to 14:8.  Defendant's argument on this issue is without merit.  As more fully

25  explained in Sections IV(B), (1), (2), (3), and (4), Plaintiff claims that it was induced into entering

26  into the License Agreement, in part, by Defendant's express statements that no additional hardware

27  would need to be acquired in order to successfully implement Defendant's MCIM software solution,

28  and that these assurances became part of the License Agreement, having been specifically spelled

1  out in the written Scope of Work that would comprise the final Statement of Work.  See Complaint,

2  ¶¶ 8, 9 and 14.  Since Defendant's statements and assurances in this area were included in the

3  License Agreements, by its express reference to the Statement of Work and other Documentation,

4  the parol evidence rule does not apply and Plaintiff has stated a valid claim for breach of the implied

5  covenant of good faith and fair dealing.

6

7  **F.   Plaintiff's Common Count For Money Had And Received**
      **Claim Does Not Fail As A Matter Of Law**

8       Defendant's challenge to the Fifth Cause of Action for money had and received is based on

9  the false premise that such claims may only be based on the three elements stated at page 14:20-24

10  of the Memorandum, and on no other grounds.  In fact the remedies provided by means of a

11  common count for money had and received are available in a variety of different situations, e.g.: (1)

12  where no contract exists between the parties; or (2) where an express contract is void; or (3) where

13  an express contract is rescinded for fraud or mistake; or (4) where the remedy of restitution is

14  sought with respect to an express contract; or (5) in a variety of other miscellaneous cases.  4

15  Witkin, *California Procedure, Pleading*, §522, pp. 611-613 (4th Ed. 1997).  Obviously, here

16  Plaintiff's claim for money had and received is based on the third and/or fourth of those examples.

17  In that context, a claim lies where the Plaintiff can prove that "money [was] paid out under a

18  contract rescinded by the Plaintiff for ordinary mistake, or fraud in the inducement, or innocent

19  misrepresentation, or ordinary incapacity." *Id.,* §522(3).  Since Plaintiff seeks rescission here, the

20  money had and received claim is exactly the appropriate related remedy for seeking restitution.

21       Defendant's reliance on three cases in support of its first challenge to this cause of action is

22  once again misplaced.  Indeed, those cases all contradict Defendant's position, and support this

23  opposition. *Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.*, C-98-1060 VRW, 2000 U.S.

24  Dist. LEXIS 17688 (N.D. Cal. November 7, 2000) involved a claim by an excess insurer against the

25  primary insurer for contribution and indemnification, and for money had and received.  The court

26  summarized the elements of the latter cause of action by citing with approval the case of *Schultz v.*

27  *Harney* 27 Cal. App. 4th 1611 (1994) (discussed below), and *First Interstate Bank of California v.*

28  *State of California* 197 Cal. App. 3d 627, 635 (1987), which addresses the different situation of

1   money paid under an alleged implied contract, also supports Plaintiff's opposition in that it holds

2   that the elements of a claim for money had and received are: (1) a statement of indebtedness for a

3   certain sum; (2) the consideration paid by Plaintiff; and (3) nonpayment of the debt – all of which

4   elements are pleaded in the Fifth Cause of Action. Finally, *Schultz v. Harney* (1994) 27 Cal. App.

5   4th 1611, 1623, which involved a potential claim for reimbursement of money paid under a void

6   agreement, also supports Plaintiff's position, because it holds that a cause of action for money had

7   and received is stated on merely alleging that "Plaintiff has paid money to the Defendant pursuant to

8   a contract which is void for illegality" – a situation identical to that which arises when a contract is

9   rescinded.

10        Defendant's second challenge to this cause of action is also misplaced. The fundamental

11   basis for a claim in *equity* for money had and received is, of course, that a Defendant has received

12   money to which it is not entitled. Defendant's second challenge gets this principle exactly

13   backwards, by arguing that the claim is deficient because "Defendant's obligations . . . were to

14   provide software and related services, not pay Plaintiff money." Memorandum, 15:15-16.

15   Defendant seeks to support this backwards argument by relying on *Mike Nelson Co. v. Hathaway*,

16   CV F 05-0208 AWI, 2005 U.S. Dist. LEXIS 27377. However, that case was not one in which - as

17   here - Defendant had received any payments from Plaintiff. *Mike Nelson Co.* was a case in which

18   Plaintiff sought damages for Defendant's failure to deliver building materials at the prices

19   contracted for, with the result that Plaintiff had to purchase those materials at a higher price.

20   Plaintiff claimed damages representing the additional expense incurred - not *reimbursement of*

21   *money actually paid to Defendant*. Under those facts, the court correctly held - as cited by

22   Defendant that "the element of indebtedness is not satisfied where the Plaintiff seeks *damages for*

23   *breach* or where the obligation of the Defendant is something *other than the payment of money*".

24   Clearly a Plaintiff cannot recover money "had and received" if no money has been had and

25   received! Thus, this objection by Defendant is also ill conceived, and must be rejected.

26        Under the circumstances, Plaintiff has adequately alleged its claim for money had

27   and received, and Defendant's motion must be denied as to the Fifth Cause of Action.

28       **G.**    **Plaintiff's Claim For Punitive Damages Is Not Contractually Barred**

1    The only cause of action which includes a claim for punitive damages is the Second

2  Cause of Action for intentional misrepresentation.  Complaint, ¶30.  Thus, to the extent that

3  Defendant challenges the punitive damages claim on the grounds that such damages are not

4  recoverable on the breach of covenant claim, Defendant's arguments are based on a misreading of

5  the complaint.  Memorandum, 16:6-20.  The same applies to Defendant's arguments addressed to

6  the claim for negligent misrepresentation.  *Id.,* 16:20-23.

7    The contract term relied on by Defendant as the basis for its challenge to the claim for

8  punitive damages does not bar such a claim on the intentional misrepresentation cause of action.

9  That limitation states, in relevant part, that:

10       Under no circumstances will Apropos be liable for indirect, incidental,
         consequential, special or exemplary damages (even if Apropos has been
11       advised of the possibility of such damages) arising from this agreement, or
         the use or inability to use the software.
12

13    Thus, the only exemplary damages claims that are barred are those that: (1) arise from the

14  agreement; or (2) arise from the use or inability to use the software.  Significantly, the author of the

15  agreement did not use the more inclusive term that exemplary damages were barred if they merely

16  *related to* the agreement – a distinction exhaustively adjudicated in the context of the scope of

17  arbitration agreements. See, e.g., *Tracer Research v. Nat. Environ. Services Co.* 42 F. 3d 1292,

18  1295 (9th Cir. 1994) (The term "arising under" an agreement covers only those disputes relating to

19  the interpretation and performance of the contract itself, not tort claims, and the absence of the

20  words "relating to" in an agreement is "significant.").

21    Given the foregoing interpretation of the term "arising under," and the plain meaning of

22  those words, it cannot be said that the intentional misrepresentation claim "arose under" the

23  parties' agreement.  Indeed, that agreement had not even come into being at the time that the

24  misrepresentations were made, and those misrepresentations manifestly did not "arise from" the as

25  yet not concluded agreement.  Thus, the parties' contract does not bar Plaintiff's punitive damages

26  claim, and Defendant's motion must be denied to the extent that it seeks dismissal of that claim.

27                                **V.  CONCLUSION**

28    For all the foregoing reasons, Defendant's Motion to Dismiss and its accompanying Motion

00188525v1}                                          -22-

PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; Case No. 06-0341-CW

1 to Strike should be dismissed in their entirety.

2

3 Dated:  June 16, 2006                    CARR & FERRELL *LLP*

4

5                                          By ____/s/_____
                                              ROBERT J. YORIO

6

7                                          Attorneys for Plaintiff
                                           NORCAL WASTE SYSTEMS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28